IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| WILLIAM KELLY VAUGHN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-21 |
| | § | |
| STEVE MASSIE, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

William Kelly Vaughn (TDCJ #01859690) has brought an action under 42 U.S.C. § 1983 alleging that his civil rights were violated by the defendants' deliberate indifference to his safety. Vaughn, who is proceeding *pro se* and has been granted leave to proceed *in forma pauperis*, alleges that the defendants forced him to work in the kitchen of the Ramsey Unit of the Texas Department of Criminal Justice ("TDCJ") in violation of his medical restrictions. Two defendants have asserted entitlement to qualified immunity and moved for summary judgment (Dkt. 25 and Dkt. 26).[1] Vaughn has responded (Dkt. 30, Dkt. 31, Dkt. 32, and Dkt. 33). In addition, the Court will consider Vaughn's live complaint to be part of the summary judgment record because Vaughn declared under penalty of perjury that the facts set forth in the complaint are true and correct (Dkt. 1 at p. 5). *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified

---

[1] Vaughn sued four defendants. The claims against one defendant were dismissed during screening. The fourth defendant, D'Aundrea Starling, no longer works for TDCJ. Starling has been served by the United States Marshals Service and has answered the lawsuit (Dkt. 39) but has not filed a dispositive motion. This opinion does not dispose of the claims against her.

complaint may be treated the same as when they are contained in an affidavit."); *see also Davis v. Hernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[F]ederal courts, this one included, have a traditional disposition of leniency toward *pro se* litigants.") (quotation marks omitted). After reviewing all of the evidence submitted, the parties' briefing, and the applicable law, the Court concludes that the defendants' motions for summary judgment must be granted for the reasons that follow.

I. **BACKGROUND**

Vaughn, who is 46 years old and who began serving his current prison sentence in 2013, has a medical history dating back to his twenties that includes numerous serious injuries. He has been shot in the shoulder and has broken his sternum; apparently, bone spurs from the broken sternum remain in his chest, and the gunshot wound to this day causes occasional shoulder dislocations (Dkt. 26-2 at pp. 7, 26). At some point, Vaughn also broke his left ankle and his right wrist (Dkt. 26-2 at p. 18). In approximately 2007, Vaughn injured his neck in a motorcycle accident (Dkt. 26-2 at p. 18). During his time in TDCJ custody, as a result of his medical history and his complaints of back and joint pain, Vaughn has been prescribed pain medication and physical therapy; has been given medical boots (for ankle support); and has been measured for a back brace (Dkt. 26-2 at pp. 4, 12, 19, 35). He has also been given a no-handcuff pass (to protect his shoulder, though that pass was eventually discontinued) and medical restrictions on the work he can be forced to do (Dkt. 26-2 at pp. 7, 8, 19).

In this lawsuit, Vaughn alleges that the defendants forced him to work in the Ramsey Unit kitchen in violation of his medical restrictions. According to Vaughn's evidence, which will be credited in this summary proceeding, Defendant Augustine Osadolor awoke Vaughn in the early morning of October 17, 2015 and ordered Vaughn to report to the kitchen for work (Dkt. 1 at p. 6). Vaughn informed Osadolor that his work assignments were subject to the following restrictions: (1) no repetitive squatting; (2) no bending at the waist; (3) no walking on wet/uneven surfaces; and (4) no lifting over 25 pounds (Dkt. 1 at p. 6). Osadolor responded that "everyone has restrictions" and ordered Vaughn to go to the kitchen (Dkt. 1 at p. 6). Upon entering the kitchen, Vaughn reported to Defendant D'Aundrea Starling, the Ramsey Unit food service manager (Dkt. 1 at p. 6). Just as he had with Osadolor, Vaughn informed Starling of his work restrictions (Dkt. 1 at p. 6). Starling responded by saying that Defendant Jacqueline Jones, the unit's assistant warden, had ordered Starling to have the unit's utility squad,[2] of which Vaughn was a member, clean the kitchen that day (Dkt. 1 at p. 6). Starling added that she would initiate a disciplinary case against Vaughn if he refused the work assignment (Dkt. 1 at p. 9). To avoid the disciplinary case, Vaughn joined the rest of the utility squad in taking on the assignment, which for Vaughn entailed scrubbing shelves, walls, and kitchen equipment and mopping floors (Dkt. 1 at pp. 6, 8, 9). According to a Step One grievance that he filed after the cleaning job was complete, Vaughn suffered

---

[2] In her affidavit, Jones testifies that "[t]he Utility Squad is made up of offenders with medical conditions who are assigned light work duties around the unit" (Dkt. 26-4 at p. 3). Vaughn does not contradict this characterization.

unspecified pain after he cleaned the kitchen (Dkt. 1 at p. 10).[3] Vaughn has not presented any evidence that either clarifies the nature and duration of the pain or attributes any specific injury to the October 17, 2015 work assignment. There is no evidence in Vaughn's medical records showing that Vaughn complained to any medical provider about any pain or injury resulting from the kitchen cleaning assignment. Vaughn has also failed to present any evidence showing that he complained of pain or injury during the cleaning assignment itself.

It is clear that the unit medical staff considered Vaughn capable of performing light-duty work when he was ordered to clean the kitchen. At the time of the kitchen cleaning assignment, Vaughn's work restrictions did not limit him to sedentary work and did not limit the amount of time for which he could stand (Dkt. 26-2 at p. 28). Indeed, Vaughn's real complaint seems to be not that cleaning the kitchen was more strenuous than his restrictions allowed but that his restrictions should have been changed to make even light-duty jobs like cleaning the kitchen off-limits. Uncontroverted evidence shows that, just a month before the kitchen cleaning assignment, Vaughn had sought a "medically unassigned" designation from a unit medical provider—a designation that, if granted, would effectively have allowed Vaughn to claim a medical exemption from any work assignment (Dkt. 26-2 at p. 19).[4]

---

[3]Specifically, Vaughn's grievance said: "I have been in pain since [the kitchen cleaning] and have realy [sic] had to take it easy" (Dkt. 26-1 at p. 5).

[4]The Court takes judicial notice that TDCJ medical classification standards indicate that a "medically unassigned" inmate is an inmate who "should not be given a regular work assignment due to a medical condition." A medically unassigned inmate "may attend school or pre-release programs if approved by the provider."
*See http://tdcj.state.tx.us/divisions/cmhc/docs/cmhc_policy_manual/A-08.04_Attachment_A.pdf.*

However, the provider determined that there was "[n]o medical indication" for such a certification and, to the contrary, "[a]dvised [Vaughn] that activity [wa]s encouraged to keep [his] joints active" (Dkt. 26-2 at p. 19).[5] Notably, Vaughn's claims that debilitating pain should have exempted him from any work assignments are undercut by his own admissions that he benefitted from light activity: just nine days before the kitchen cleaning assignment, Vaughn, who had been working on trash-pickup detail with the utility squad, told a unit medical provider that "staying active [wa]s the only way [his] back d[id] not hurt so much" (Dkt. 26-2 at p. 12). And after the kitchen cleaning assignment, Vaughn insisted to a unit medical investigator that he "did not want to just sit around" (Dkt. 32-1 at p. 44).

Defendants Osadolor and Jones have asserted entitlement to qualified immunity and moved for summary judgment.

## II. THE PLRA, SUMMARY JUDGMENTS, AND QUALIFIED IMMUNITY

### A. The PLRA

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which

---

[5]To the extent that Vaughn is indeed trying to argue that he should have received more favorable work restrictions, he has failed to state a Constitutional claim. *See Winston v. Stacks*, 243 Fed. App'x 805, 807 (5th Cir. 2007). Vaughn, moreover, has not sued anyone who had any role in setting his work restrictions.

relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Vaughn, proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Vaughn proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has clarified that "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Rule 56

The defendants have filed a motion for summary judgment under Federal Rule of Civil Procedure 56. Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing

out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which

show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F.Supp.2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *Smith v. Southwestern Bell Tel. Co.*, 456 Fed. App'x 489, 492 (5th Cir. 2012) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Lastly, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the

Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Although Vaughn is proceeding pro se, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to put that evidence properly before the court. *Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 217 (5th Cir. 2016).

### C. Qualified Immunity

The defendants' motion invokes qualified immunity (Dkt. 26 at p. 3). In civil rights actions such as this one where the non-movant is suing government officials, the issue of qualified immunity alters the summary judgment analysis. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). If the qualified immunity defense is raised, the burden shifts to the non-movant to rebut it. *Id.* All inferences are drawn in the non-movant's favor. *Id.*

The qualified immunity analysis is complex and intensely fact-specific. The Court begins by applying the two prongs of the qualified immunity defense, though the Court may analyze the prongs out of order. The first prong is the question of whether the official's conduct violated a Constitutional right of the plaintiff. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The second prong is the question of whether the Constitutional right was clearly established at the time of the violation. *Id.* For the right to have been clearly established for purposes of qualified immunity, the contours of the right must have been

sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's actions must have been readily apparent from sufficiently similar situations, though there need not have been commanding precedent holding the very action in question unlawful. *Id.* at 236–37.

If the plaintiff satisfies both prongs—i.e., if the official's actions violated a clearly established Constitutional right—the Court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established at the time of the disputed action. *Callahan*, 623 F.3d at 253. Whether an official's conduct was objectively reasonable is a question of law for the Court, not one of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Callahan*, 623 F.3d at 253; *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993).

Qualified immunity "establishes a high bar"—*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)—that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Essentially, a plaintiff must demonstrate that no reasonable official could have believed that his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

## III. VAUGHN HAS NOT PRESENTED EVIDENCE SUFFICIENT TO REBUT THE QUALIFIED IMMUNITY DEFENSE.

Vaughn alleges that Osadolor and Jones forced him to work in the Ramsey Unit kitchen in violation of his medical restrictions. Vaughn's evidence fails to defeat the defendants' assertion of qualified immunity.

### A. Prisoners and work assignments—the legal standard

A prison work assignment can violate the Eighth Amendment when that assignment compels an inmate to perform physical labor which is beyond the inmate's strength, endangers the inmate's life, causes the inmate undue pain, or significantly aggravates a serious physical ailment from which the inmate suffers. *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989); *Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983). In order to establish a Constitutional violation, the prisoner must establish deliberate indifference on the part of the prison officials who assigned him the work. *Jackson*, 864 F.2d at 1246.

The standard for deliberate indifference is extremely high and requires more than a showing that the defendants were negligent or mistaken in their judgment. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 1999). Establishing deliberate indifference, in fact, requires more even than a showing of gross negligence. *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (pointing out that gross negligence is "a heightened degree of negligence" while deliberate indifference is "a lesser form of intent") (quotation marks omitted). To establish deliberate indifference, a prisoner must show that the prison officials: (1) were aware of facts from which an

inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) actually drew an inference that such potential for harm existed. *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). The deliberate-indifference standard is designed to be stringent enough to separate acts or omissions that amount to intentional choices from those that are merely unintentionally negligent oversights. *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997). To that end, it draws on the test for "subjective recklessness" used in criminal law, which "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer v. Brennan*, 511 U.S. 825, 836–40 (1994). The plaintiff must show that the defendants knowingly exposed him to and consciously disregarded a substantial risk of serious harm. *Brewer v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

### B. Osadolor and Jones are entitled to qualified immunity.

The Court will grant summary judgment on the claims against Osadolor and Jones. Vaughn was a member of the utility squad, and as a member of that squad he performed light-duty jobs; he was not limited to sedentary jobs. His request to be medically unassigned, which was made a month before the kitchen-cleanup job, was denied by unit medical staff. He told a unit medical provider just nine days before the kitchen-cleanup job that he had been working on trash-pickup detail and that "staying active" was the only thing that helped his back pain. There is no evidence showing that Vaughn ever told Osadolor or Jones, either

during or after the kitchen cleanup, that the cleanup caused him pain or aggravated any physical ailment. There is no evidence in Vaughn's medical records showing that Vaughn complained to any medical provider about any pain or injury resulting from the kitchen cleaning assignment. At bottom, there is no evidence in the record showing that these defendants could have inferred or did infer that the kitchen-cleanup job compelled Vaughn to perform physical labor which was beyond his strength, endangered Vaughn's life, caused Vaughn undue pain, or significantly aggravated a serious physical ailment from which Vaughn suffered.

On a related but distinct issue, Vaughn insists that in being ordered to clean the kitchen he was made to work beyond the boundaries of his medical restrictions. However, based on the record evidence, the only part of the cleaning job that even arguably fell outside of Vaughn's restrictions was mopping the kitchen floor (which might, viewed in the light most favorable to Vaughn, have been a violation of the restriction against walking on wet or uneven surfaces).[6] Regardless, even if the kitchen cleanup breached Vaughn's medical restrictions, Vaughn still has not defeated the defendants' qualified immunity because he has not offered any evidence (beyond a vague reference to pain for which no further explanation is provided) linking the cleanup to any sort of injury. Without that link, Vaughn cannot establish an Eighth Amendment violation here. In other words, on this record and given the light-duty nature of the work, the Court will not equate a possible one-time breach of

---

[6]Vaughn has not presented any evidence showing that he was required during the kitchen cleanup to squat repeatedly, bend at the waist, or lift over 25 pounds.

Vaughn's medical restrictions with a Constitutional violation.[7] *See Winston v. Stacks*, 243 Fed. App'x 805, 806 (5th Cir. 2007) ("Winston has not alleged, and the records do not show, that his medical condition was aggravated, or that he suffered any injury or harm, as a result of his work assignment. Therefore, even if his allegations [that he was assigned work that violated his medical restrictions] are accepted as true, he has failed to allege the requisite claim of deliberate indifference in connection with his work assignment.") (bracketed phrase added; quotation marks omitted).

Osadolor and Jones are entitled to qualified immunity. Their motions for summary judgment (Dkt. 25 and Dkt. 26) are **GRANTED**, and the claims against them are dismissed. D'Aundrea Starling is the only defendant remaining in this lawsuit.

## IV. OTHER PENDING MOTIONS

Several other motions are pending. Those motions are disposed of as follows:

Vaughn's motion to compel (Dkt. 7) is **DENIED**. Vaughn's many motions explicitly or impliedly requesting a default judgment (Dkt. 11, Dkt. 20, Dkt. 23, Dkt. 27, and Dkt. 28) are **DENIED**. The defendants' motion to deny a default judgment (Dkt. 18) is **GRANTED**. Vaughn's motion requesting that the Court serve the defendants with copies of all of

---

[7]Although the Court is required at this stage to credit Vaughn's evidence and draw all inferences in his favor, the Court does note that the defendants have not conceded a violation of Vaughn's medical restrictions and have consistently and vehemently denied that Vaughn was required to perform any task—even mopping—that fell outside of those restrictions. Starling, who actually supervised the cleanup, told grievance investigators that, upon being informed of Vaughn's medical restrictions, she ordered Vaughn "to only wipe top shelves" and "gave [Vaughn] help so he wouldn't bend nor lift anything" (Dkt. 26-1 at p. 9).

Vaughn's filings (Dkt. 21) is **DENIED**; no defendant has raised an issue regarding service.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas on February 7, 2018.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE