UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| WILLIAM KELLY VAUGHN, TDCJ # 01859690, | § § § § § § § § § § | |
| Plaintiff, | | |
| VS. | | CIVIL ACTION NO. 3:16-CV-0021 |
| STEVE MASSIE, ASST. REGIONAL DIRECTOR, *et al*, | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

In this civil rights suit, Plaintiff William Kelly Vaughn, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), proceeds *pro se* and *in forma pauperis*. Plaintiff alleges that Defendant D'Aundrea Starling forced him to perform kitchen work in violation of his medical restrictions. Starling has filed a motion for summary judgment (Dkt. 45) and two briefs in support (Dkt. 46, Dkt. 54). Plaintiff has filed multiple briefs and other responsive documents (Dkt. 49, Dkt. 50, Dkt. 55, Dkt. 57, Dkt. 58). The motion is ripe for consideration. Having reviewed the evidence submitted, the parties' briefing, the applicable law, and all matters of record, the Court concludes that the motion for summary judgment should be **GRANTED** and that all of Plaintiff's claims must be **DISMISSED** for the reasons that follow.

In addition, Defendant's motion to seal (Dkt. 53) is **GRANTED** and Docket Entries 45 & 46 will be **SEALED** because they contain information about Plaintiff's medical condition and history.

I. **BACKGROUND**

Plaintiff Vaughn alleges that Defendants forced him to work in the kitchen of TDCJ's Ramsey I Unit and that the work assignment violated his medical restrictions. Vaughn's complaint (Dkt. 1) named four Defendants: Steve Massie, identified by Plaintiff as an "Assistant Regional Director" of TDCJ, who was dismissed at the screening stage (Dkt. 9); Assistant Warden Jacqueline Jones and Sergeant Augustine Osadolor, who were dismissed on summary judgment on February 7, 2018 (Dkt. 40); and D'Aundrea Starling, a food service manager at the Ramsey I Unit. Plaintiff's claims against Starling are the only remaining claims in this lawsuit.

Vaughn alleges that on October 17, 2015, he arrived to work in the Ramsey I Unit kitchen as ordered by Osadolor, and presented Starling with his medical restrictions.[1] He describes his restrictions as "no repetitive squatting, no bending at the waist, no walking on wet/uneven surfaces and no lifting over twenty five pounds" (Dkt. 1, at 6).[2] He alleges that Starling nevertheless assigned him work including scrubbing shelves, walls, floors, and industrial kitchen equipment, all of which violated his restrictions and jeopardized his health, because Warden Jones had ordered her to have the utility squad,

---

[1] As noted by the Court in its previous opinion, Vaughn had serious injuries before his incarceration, including a gunshot wound, multiple broken bones, and a neck injury from a motorcycle accident (Dkt. 40, at 2 (citing record)). During his incarceration, he has received medical attention including pain medication, physical therapy, and medical devices (*id.*).

[2] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination on the Court's electronic case filing ("ECF") system.

which included Vaughn, clean the kitchen (*id.*; *see* Dkt. 55, at 1-2; Dkt. 57). Plaintiff maintains that two other inmates witnessed his exchange with Starling (Dkt. 55, at 2).

Vaughn states that, because Starling threatened to initiate a disciplinary case against him if he refused the work assignment, he joined the utility squad and performed the work (Dkt. 1, at 6; Dkt. 55, at 1-2). Although he claims that he suffered pain as a result of the assignment, he cites to no record evidence supporting his allegation.[3]

This Court previously determined that, "[a]t the time of the kitchen cleaning assignment [on October 17, 2015], Vaughn's work restrictions did not limit him to sedentary work and did not limit the amount of time for which he could stand" (Dkt. 40, at 4).[4] Starling has submitted an affidavit stating that Warden Jones had ordered Vaughn's work squad to clean the Ramsey I Unit kitchen, where Starling worked, and that inmates' medical restrictions are "carefully checked" before the inmates are ordered to report to work (Dkt. 45-6, at 3). Starling avers that Plaintiff did not present her with

---

[3] As noted in the Court's previous order granting summary judgment to Defendants Jones and Osadolor, Plaintiff provided no detail about the nature or duration of the pain he allegedly suffered as a result of the work assignment, and did not cite the Court to medical evidence in the record supporting his allegation (Dkt. 40, at 4). Starling's motion attaches excerpts from Vaughn's TDCJ medical records, which indicate that, in the period following the incident, Vaughn sought a medical referral on November 4, 2015, due to "shoulder instability" attributable to a past gunshot wound (Dkt. 45-3, at 24); was evaluated for a back brace on November 13, 2015 (*id.* at 35); received physical therapy for his shoulder on November 18, 2015 (*id.* at 26, 32); had cardiac testing on November 24, 2015 (*id.* at 30); and was evaluated for "rib/sternal pain" on December 17, 2015 (*id.* at 29). None of these records reflect complaints of pain or an injury resulting from the events of October 17, 2015.

[4] Medical records from TDCJ demonstrate that Plaintiff requested in September 2015 that medical staff "medically unassign" him from work assignments because of pain but that, after review, clinic staff concluded that there was "[n]o medical indication to medically unassign at this time," and counseled him that activity was encouraged (Dkt. 45-3, at 17-19).

written evidence of his restrictions but that, based on his oral representation, she assigned him less onerous tasks:

> When Vaughn reported to the kitchen for work, I had no reason to believe that Vaughn was prohibited from working in the kitchen. Contrary to his allegations, Vaughn never showed me any medical restrictions. Nevertheless, I took his word for it, and I only assigned him to wipe down the top shelves in the kitchen, and there was no bending or lifting required.

(*Id.*). She further states that, if she had been informed that his medical restrictions had prevented this work, she would have followed those instructions:

> If one of my superiors, or the administration, had informed me that Vaughn should not have been ordered to work in the kitchen, or to do the work that I assigned, then I would have had him stop such work, relieved him form that duty, and awaited further instructions from my superiors or administration. . . . I have not, and would not, order an offender, including Vaughn, to work at a job in the kitchen that his medical restrictions prohibited.

(*id.* at 4). She states that she does not have any knowledge that Vaughn suffered "any injury or damage from working in the kitchen on that day" (*id.*).

TDCJ records attached to Starling's motion contain Vaughn's health summary as of September 21, 2015, just before the incident in question, which reflects work restrictions as follows: "no lifting > 25 lbs.," "no bending at waist," "no repetitive squatting," and "no walk wet/uneven surfaces" (Dkt. 45-3, at 28). Vaughn's health summary from shortly after the incident, dated November 12, 2015, continued the same restrictions and added a restriction for "no reaching over shoulder" (*id.* at 27). Both documents further reflect that Vaughn was not "medically unassigned," was not restricted to sedentary work, and was not restricted in walking, standing, or repetitive use of his

hands. Plaintiff has submitted an older health summary that reflects essentially the same restrictions. *See* Dkt. 49, at 3 (health summary dated June 18, 2013).

After the incident, Plaintiff filed an administrative grievance, which was denied at both stages of TDCJ's administrative grievance procedure (Dkt. 1, at 10-11; Dkt. 45-2). As part of the grievance investigation, Starling gave a statement in which she stated that she only assigned Vaughn to wipe top shelves, that he never showed her his medical restrictions, and that she accommodated his request for lighter tasks (Dkt. 45-2, at 9). TDCJ officials concluded that Vaughn's allegations were unsubstantiated because "you have no restrictions preventing you from your assigned job" and, on that basis, denied his grievance (*id.* at 4).[5]

Vaughn argues in supplemental briefing that officials at the Ramsey I Unit are "corrupt," attaching recent news articles reporting that officials from the unit have resigned in connection with a disciplinary quota system (Dkt. 57, Dkt. 58).[6]

Plaintiff requests $15 million in damages "for pain and suffering" associated with the alleged violation of his medical restrictions and $1 billion in damages "for his time and debt that was accrued in this matter" (Dkt. 55, at 2; *see* Dkt. 57, Dkt. 58). He also

---

[5] Plaintiff also has submitted records from Grievance 2018049219, pursued through both stages of the administrative grievance process, in which he complained that in November 2017 he was forced to walk on a wet and slippery floor in the Ramsey I kitchen (Dkt. 50). The records submitted by Plaintiff indicate that he was allowed to change to a different work assignment, as he had requested in his Step One grievance (*id*. at 3). This grievance concerns alleged events that took place after this suit was filed, and is not directly relevant to Plaintiff's claims before the Court.

[6] Plaintiff also states that he received a disciplinary case on April 28, 2018 (Dkt. 58).

has filed a motion for polygraph examination of Defendants (Dkt. 41); a motion for jury trial (Dkt. 42); a motion not to accept Starling's motion for summary judgment (Dkt. 47); and a motion for default judgment (Dkt. 48).

## II. STANDARDS OF REVIEW

### A. *Pro Se* Pleadings

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

### B. Summary Judgment—Rule 56

Defendant Starling has moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the

movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his

burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts. Pro se litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

## III. DISCUSSION

As a preliminary matter, Plaintiff has filed a motion "not to accept" Starling's motion for summary judgment (Dkt. 47). Plaintiff asserts that Starling "has been in contempt for over two years" and that she "sudden[ly] disappear[ed] over two years ago" but has now "mysteriously" reappeared in "an attempt to manipulate the courts" (Dkt. 47, at 1-2). However, the court record reflects that the Office of the Attorney General made diligent attempts to locate Starling after she left employment with TDCJ (Dkt. 12, Dkt. 15), and that the attempts ultimately were successful. Starling has appeared and made appropriate filings with the Court, including an answer (Dkt. 39) and a summary judgment motion (Dkt. 45). Plaintiff's motion therefore will be **denied**.

### A. Official Immunity

A claim against an official employed by TDCJ in his or her official capacity is a claim against the agency, and thus a claim against the State of Texas. *See Mayfield v.*

*Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983. *NiGen*, 804 F.3d at 394.

To the extent Plaintiff sues Starling in her official capacity as a state employee, Starling is entitled to immunity under the Eleventh Amendment from claims for monetary damages. Accordingly, Defendant is entitled to summary judgment on this issue.

### B. Qualified Immunity

Defendant Starling has invoked qualified immunity, and Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

### C. Eighth Amendment

Plaintiff alleges that Starling violated his Eighth Amendment rights when she forced him to work in violation of his medical restrictions. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt.*, 822 F.3d at 180; *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Because Plaintiff was, at all relevant times, a convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment prohibition against "cruel and unusual" conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

In certain circumstances, prison work conditions imposed on an inmate with medical limitations can violate the Eighth Amendment. "If prison officials knowingly

put [an inmate] on a work detail which they knew would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs." *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). *See Williams v. Henagan*, 595 F.3d 610, 622 n.18 (5th Cir. 2010) ("Prison work conditions may . . . amount to cruel and unusual punishment"); *Douglas v. McCasland*, 194 F. App'x 192 (5th Cir. 2006); *Williams v. Wooten*, 119 F. App'x 625, 626 (5th Cir. 2004). Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015).

The record evidence indicates that Vaughn's work assignment was not decided by Starling, but instead was set before he reported to work. *See* Dkt. 45-6, at 3 (Starling avers in affidavit that Warden Jones had ordered Vaughn's work squad to clean the kitchen that day, and that inmates' "medical restrictions . . . are carefully checked before they are ordered to report to work"). The evidence in the record also shows without contradiction that Vaughn's work assignment accommodated all of his medical restrictions. *See* Dkt. 45-3, at 28 (TDCJ health summary dated September 21, 2015, reflects that Vaughn had work restrictions regarding lifting, bending, repetitive squatting, and working on wet or uneven surfaces, but no other restrictions); Dkt. 45-2, at 4 (decision on Vaughn's grievance regarding his work assignment on October 17, 2015, concluded that Vaughn's allegations were unsubstantiated because he "ha[d] no

restrictions preventing [him] from [his] assigned job"). Vaughn's Eighth Amendment claim fails on this basis. *See Mendoza v. Lynhaugh*, 989 F.2d 191, 194-95 (5th Cir. 1993) (affirming dismissal of Eighth Amendment claim as frivolous because "prison officials had placed [the plaintiff] in an appropriate work classification that took into account his physical ailments").

Additionally, although Vaughn argues that the "deliberate indifference" standard is satisfied in this case,[7] he points to no evidence that supports his position that Starling acted with deliberate indifference, a high standard requiring more than "mere negligence." *See Hinojosa*, 807 F.3d at 665; *Jackson*, 864 F.2d at 1246. Plaintiff's conclusory allegations are insufficient to prevent summary judgment. *See Jones*, 678 F.3d at 348.

Because Vaughn has not demonstrated a genuine issue of material fact as to his Eighth Amendment claim, summary judgment is granted for Starling. For essentially the same reasons, Starling is entitled to qualified immunity. *See Carroll*, 800 F.3d at 169 (qualified immunity analysis requires determination of whether facts, viewed in the light most favorable to the plaintiff, constitute a violation of a constitutional right).

## IV. <u>CONCLUSION</u>

For the reasons stated above the Court **ORDERS** that:

1. Plaintiff's motion not to accept Defendant's summary judgment motion (Dkt. 47) is **DENIED**.

---

[7] *See* Dkt. 55 (Plaintiff's brief cites authority on the deliberate indifference standard, including *Helling v. McKinney*, 509 U.S. 25 (1993), *Wilson v. Seiter*, 501 U.S. 294 (1991), and *Estelle v Gamble*, 429 U.S. 97 (1976)).

2. Defendant's motion to seal (Dkt. 53) is **GRANTED**. The Clerk is **INSTRUCTED** to place Docket Entries 45 & 46 under seal.

3. Defendant's motion for summary judgment (Dkt. 45) is **GRANTED**. Plaintiff's claims against Defendant Starling are **DISMISSED with prejudice**.

4. All other pending motions are **DENIED as moot**.

A separate final judgment will issue.

SIGNED at Galveston, Texas, this 6th day of September, 2018.

George C. Hanks Jr.
United States District Judge